IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

HOLLY L. OAKMAN,

                Plaintiff,

v.

KILOLO KIJAKAZI, Acting
Commissioner of Social Security,

                Defendant.

C.A. No. 22-1084-GBW

---

Marc Snyder, ROSEN MOSS SNYDER & BLEEFELD, LLP, Wilmington, DE

    *Counsel for Plaintiff*

Shawn Carver, Andrew Lynch, SOCIAL SECURITY ADMINISTRATION, OFFICE OF PROGRAM LITIGATION, Baltimore, MD

    *Counsel for Defendant*

**MEMORANDUM OPINION**

March 19, 2024
Wilmington, Delaware

                                                                     GREGORY B. WILLIAMS
                                                                     U.S. DISTRICT JUDGE

Pending before the Court is the Motion for Summary Judgment of Plaintiff Ms. Holly Oakman (D.I. 13) and the Cross-Motion for Summary Judgment of Defendant Ms. Kilolo Kijakazi (D.I. 16). For the reasons set forth below, the Court grants Ms. Oakman's motion and denies Ms. Kijakazi's cross-motion.

## I. BACKGROUND

Ms. Oakman brought this action under 42 U.S.C. § 405(g) for review of Ms. Kijakazi's, the Acting Commissioner of Social Security (the "Commissioner"), final decision that Ms. Oakman was not entitled to disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act. D.I. 17 at 1. Ms. Oakman filed her applications for disability insurance benefits and supplemental security income in December 2019. *Id*. In those applications, Ms. Oakman claimed that she has been disabled since January 2019 due to her scoliosis, chronic pain, muscle spasms, joint pain, migraine headaches, light sensitivity, and depression. *Id*. The Delaware Disability Determination Service denied her claim for benefits and, subsequently, an administrative law judge (ALJ) conducted a hearing regarding that claim. *Id*. The ALJ found that Ms. Oakman was not disabled, and that she could perform the requirements of light, unskilled occupations. *Id*. In June 2022, after the Appeals Council denied Ms. Oakman's request for review, the ALJ's decision became the final decision of the Commissioner. *Id*.

Thereafter, Ms. Oakman filed suit in this Court to challenge the Commissioner's final decision. *See* D.I. 14. Ms. Oakman alleges that the ALJ's residual functional capacity determination (the "RFC determination") was not supported by substantial evidence because the ALJ erred by finding that the opinion issued by Dr. Rapacciulo, Ms. Oakman's primary care

physician, was unpersuasive. *Id.* Ms. Oakman contends that the ALJ (1) failed to address the supportability of that opinion, and (2) mischaracterized the record in concluding that Dr. Rapacciulo's opinion lacked consistency. *Id.*

Dr. Rapacciuolo conducted a functional assessment of Ms. Oakman's medical condition. D.I. 10 ("Tr." or "Transcript"), Ex. B13F at 3. After doing so, Dr. Rapacciuolo filled out a mental RFC questionnaire with her findings. *Id.* In that questionnaire, Dr. Rapacciuolo identified that Ms. Oakman had "moderate" to "marked" limitations with respect to her ability to perform certain work-related tasks such as, *inter alia*, her ability to "understand, carry out, and remember instructions." *See, e.g., id.* at 4. Dr. Rapacciuolo also concluded that Ms. Oakman would have a need for excessive absences from the workplace and could not work for eight (8) hours a day, five (5) days per week. *Id.* at 6. As a result, Dr. Rapacciuolo opined that Ms. Oakman "me[t] the medical requirements for full disability." *Id.*

The ALJ concluded that Dr. Rapacciuolo's assessment of Ms. Oakman's condition was unpersuasive because it was "inconsistent with the contemporaneous treatment records." Tr. at 25. The ALJ found that the contemporaneous treatment records documented (a) "general[] stability in [Ms. Oakman's] over all condition", (b) "generally normal or mild findings noted on [Ms. Oakman's] mental status examinations", (c) "generally stable treatment", and (d) reports regarding Ms. Oakman's "positive response to mental health treatment" and "ongoing ability to engage in social interactions."[1] Tr. at 25 (citing *id.*, Ex B14F).

---

[1] The ALJ also rejected, as an improper legal conclusion, Dr. Rapacciuolo's conclusion, in Tr., Ex. B13F, that Ms. Oakman met the full disability requirements. *See Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011) ("The ALJ – not treating or examining physicians or State agency consultants – must make the ultimate disability and RFC determinations.").

3

## II. LEGAL STANDARDS

### A. What a Claimant Must Show to Receive Benefits Under the Social Security Act.

To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). Thus, to receive benefits under Title II of the Social Security Act, a claimant must show that they (1) possess a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in the national economy; (2) contributed to the insurance program; (3) are under retirement age; and (4) became disabled prior to the date on which he or she was last insured. 42 U.S.C. §§ 423(a), 423(d)(2)(A), 1382c(a)(3)(B); 20 C.F.R. §§ 404.131(a), 404.1505(a), 416.905(a).

### B. The ALJ's Administrative Review And Disability Determination.

At the administrative level, the ALJ follows a five-step sequential evaluation process to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520(a), 416.920(a). Under this process, the ALJ must determine whether the claimant (1) is engaged in substantial gainful activity; (2) has a severe impairment; (3) has an impairment that meets or equals a listed impairment; (4) is able to do his or her past relevant work; and (5) is able to do any other work, considering his or her age, education, work experience and RFC. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The ALJ determines the claimant's RFC between Steps Three and Four, and that RFC is defined as what the claimant is "still able to do despite the limitations caused by his or her impairment(s)." *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000) (citations omitted). To determine

the claimant's RFC, the ALJ considers the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at Step Two of his or her analysis. 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2).

At Steps One through Four, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents him or her in engaging in any of his or her past relevant work. *Mason*, 994 F.2d at 1064. Once the claimant meets this burden, the burden shifts to the Commissioner at Step Five to show that there exist jobs that (1) are in significant number in the national economy, (2) the claimant can perform, and (3) are consistent with the claimant's age, education, and work experience. *Id.*

The ALJ's five-step disability determination must also meet certain basic substantive requirements. One requirement is that the ALJ provide a "a clear and satisfactory explication of the basis on which [the ALJ's decision] rests." *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981). Thus, in order to facilitate this Court's review of the ALJ's decision under the substantial evidence standard, the ALJ must resolve conflicts in the evidence and, in doing so, "indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." *Schaudeck v. Comm'r of Soc. Sec.*, 181 F. 3d 429, 433 (3d Cir. 1999).

Oftentimes, an ALJ's disability determination requires her to evaluate various medical opinions. "The ALJ – not treating or examining physicians or State agency consultants – must make the ultimate disability and RFC determinations." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011). Thus, when evaluating medical opinions, "the ALJ may choose whom to credit." *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000) (internal citations omitted). However, the ALJ "cannot reject evidence for no reason or for the wrong reason." *Id.* Accordingly, provided that the decision is accompanied by an adequate, articulated rationale, the Court defers to the ALJ's

5

findings regarding the weight of the medical opinions and evidence in the record. *See Chandler* 667 F.3d at 361.

To ensure an adequate, articulated rationale, an ALJ is required by statute, for claims filed after March 27, 2017, to provide a written explanation of "how [he or she] considered the supportability and consistency factors" for a medical opinion. 20 C.F.R. §§ 404.1520c (b)(2), 416.920c(b)(2). "*Supportability* relates to the extent to which a medical source has articulated support for the medical source's own opinion, while *consistency* relates to the relationship between a medical source's opinion and other evidence within the record." *Cook v. Comm'r of Soc. Sec.*, 2021 WL 1565832, at *3 (M.D. Fla. Apr. 6, 2021), *report and recommendation adopted*, 2021 WL 1565162 (M.D. Fla. Apr. 21, 2021) (emphasis added). "In other words, the ALJ's analysis is directed to whether the medical source's opinion is supported by the source's own records and consistent with the other evidence of record." *Id.*; *see* 20 C.F.R. at §§ 404.1520c(c)(1-2), 416.920c(c)(1-2). The ALJ must also consider the source's relationship with the claimant, the source's specialization, and other factors that tend to support or contradict a medical opinion or prior administrative medical finding. However, the ALJ need not explicitly discuss those factors. *Id.* at §§ 404.1520c(b)(2), 416.920c(b)(2).

### C.     This Court's Substantial-Evidence Review of the ALJ's Findings.

When reviewing the Commissioner's final decision denying benefits, the Court reviews the findings of the ALJ under the standard of substantial evidence. *See* 42 U.S.C. § 405(g); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008). Under that standard, the Court reviews the existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938) (emphasis omitted). This standard is not high, and requires only "more than a mere

scintilla" of evidentiary support. *Id.* Accordingly, the Court will affirm the ALJ's determination if the ALJ relied on "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*

The Court can conduct its substantial-evidence review only if the ALJ sets forth the reasons for her decision. Accordingly, the Court will vacate the ALJ's decision and remand the case if the ALJ's decision rests on a conclusory statement that is "beyond meaningful judicial review." *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 120-121 (3d Cir. 2000); *Cotter*, 642 F.2d 700, 705-708 (3d Cir. 1981).

### III. DISCUSSION

#### A. The Court Grants Ms. Oakman's Motion for Summary Judgment and Denies Ms. Kijakazi's Cross-Motion for Summary Judgment.

Ms. Oakman contends that (1) the ALJ committed legal error by failing to consider the supportability of Dr. Rapacciulo's opinions, and (2) the ALJ's findings regarding the consistency of those opinions were not supported by sufficient evidence. *See* D.I. 14 at 14. The Court agrees with Ms. Oakman that the ALJ erred in her analysis of the supportability and consistency of Dr. Rapacciulo's opinions, but disagrees with Ms. Oakman about why the ALJ's findings were flawed. For the reasons discussed below, the Court finds that (1) the ALJ committed legal error by failing to consider the *consistency* of Dr. Rapacciuolo's opinions, and (2) the ALJ's findings regarding the *sufficiency* of Dr. Rapacciuolo's opinions were flawed. The Court addresses each in turn.

#### i. Consistency

Ms. Kijakazi contends that the ALJ's findings regarding Ms. Oakman's RFC were supported by sufficient evidence because the ALJ properly considered the consistency of Dr. Rapacciuolo's opinions in light of the "contemporaneous treatment records." *See* D.I. 17 at 13-15. In other words, Ms. Kijakazi argues that the other medical opinions in the record (i.e., those

7

opinions that were generated by other medical doctors contemporaneous to Dr. Rapacciuolo's assessment of Ms. Oakman) support the ALJ's findings. *Id.*

The Court, however, disagrees that the ALJ's consistency analysis rests on those other medical opinions, because the "contemporaneous treatment records" that the ALJ cited in her decision did not include those opinions. Tr. at 25. Instead, the ALJ cited to Exhibit B14F of the Transcript when she discussed that record. *See id.* With one (1) exception, that exhibit contains only Dr. Rappcciuolo's opinions. *See* Tr., Ex. B14F. Exhibit B14F lists Ms. Oakman's progress notes from her April 9, 2021 to June 22, 2021 visits to the hospital from which she received treatment. *See* Tr., Ex. B14F. Those progress notes contain, in relevant part, the "Provider Office Notes" from Ms. Oakman's hospital appointments and detail her doctor's notes from those visits. *See id* at 8-10, 13-14, 17-18, 21-22, 25-26, 29-30. Dr. Rapacciuolo electronically signed each progress note, except for one (1) note, which Dr. Olivia Gad signed instead. *See id.* at 21-22. However, the ALJ made no explicit findings regarding the medical opinions of Dr. Gad, nor is Dr. Gad mentioned elsewhere in the Transcript. *See generally* Tr.

Accordingly, the Court finds that the ALJ deemed Dr. Rapacciuolo's report unpersuasive based solely on the "supportability" of Dr. Rapacciuolo's opinions. *See* Tr. at 25. The ALJ, in determining the persuasiveness of Dr. Rapacciuolo's functional assessment of Ms. Oakman's medical condition, considered only whether Dr. Rapacciuolo's medical opinion was supported by the provider notes that she had previously written. *See id.* Thus, the ALJ erred, because the ALJ did not make a written finding regarding the "consistency" of Dr. Rapacciuolo's opinions—that is, whether Dr. Rapacciuolo's opinions were consistent with the evidence from other medical sources and nonmedical sources in the claim. *Cook*, 2021 WL 1565832 at *3.

The fact that Dr. Gad wrote one (1) of the progress report notes in Exhibit B14F does not compel a different result. *See* Tr., Ex. B14F. As an initial matter, the ALJ's discussion of that exhibit is cursory and, thus, the Court cannot identify which parts of Exhibit B14F the ALJ relied upon to reach her decision. *See* Tr. at 25. Thus, the Court cannot determine whether the ALJ found persuasive, or otherwise relied upon, Dr. Gad's opinions. As a result, the Court cannot determine whether the ALJ's basis for concluding that Dr. Rapacciuolo's opinions were not persuasive was because those opinions were not consistent with Dr. Gad's.

However, even if the Court were to assume that the ALJ found that Dr. Rapacciuolo's opinions were not persuasive because of Dr. Gad's opinions, the Court is not convinced that the ALJ could rely on Exhibit B14F alone to assess the consistency of Dr. Rapacciuolo's opinion. A consistency analysis requires consideration of the evidence from other medical sources and nonmedical sources in the claim. *Cook*, 2021 WL 1565832 at *3. Here, those other sources include, at least, the contemporaneous medical opinions of Dr. Sturdivant (Ms. Oakman's family physician) and Dr. Kirby (a psychologist that Ms. Oakman visited for consultation). *See* D.I. 17 at 2, 7; Tr. 17-25.

The ALJ's failure to enter a written finding regarding the consistency of Dr. Rapacciuolo's opinion renders the ALJ's conclusion regarding Ms. Oakman's RFC "beyond judicial review." *See Burnett*, 220 F.3d at 120-121. The ALJ's dismissal of Dr. Rapacciuolo's opinions regarding Ms. Oakman's "moderate to marked limitations"—without reference to other medical evidence in the record—deprives this Court of the ability to ensure that the ALJ's findings regarding Ms. Oakman's RFC were based on substantial evidence. *See* Tr. at 25. Dr. Rapacciuolo, for example, found that Ms. Oakman had "marked" limitations regarding her ability to understand, carry out, and remember instructions; respond appropriately to coworkers and customary work pressures;

9

and perform simple and/or repetitive tasks—limitations that, if consistent with the record, might support a finding that Ms. Oakman is disabled. Ex. B13F; *see* SSR 85-15 ("The basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting."). Thus, while the Commissioner cites to other evidence in the record that might support a finding by the ALJ that Dr. Rapacciuolo's opinions lack consistency, *see* D.I. 17 at 11-15, the Court cannot conclude that the ALJ's failure to address the consistency of Dr. Rapacciuolo's opinions was harmless. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546 (6th Cir. 2004) ("A court cannot excuse the denial of a mandatory procedural protection simply because, as the Commissioner urges, there is sufficient evidence in the record for the ALJ to discount the treating source's opinion and, thus, a different outcome on remand is unlikely.").

### ii. Supportability

Ms. Oakman also contends that the ALJ's analysis of Dr. Rapacciuolo's medical opinion was flawed because the ALJ made an improper judgment concerning Ms. Oakman's abilities based on her presentation during her medical appointments. D.I. 14 at 18. The Court agrees.

In *Morales v. Apfel*, the Third Circuit reviewed an ALJ's determination that a claimant's physician's medical opinion regarding the claimant's ability to return to work was unreliable in light of that physician's observations of the claimant during treatment. 225 F.3d 310, 319 (3d Cir. 2000). There, the physician opined that the claimant was "markedly limited in a number of relevant work-related activities." *Id.* However, based on the physician's observation that the claimant was "stable and well controlled with medication" during treatment, the ALJ discounted that opinion. *Id.* The Third Circuit explained that the "work environment is completely different

from home or a mental health clinic" for individuals that suffer from an affective or personality disorder marked by anxiety. *Id.* Thus, the court found that the physician's opinion regarding the claimant's stability during treatment was not a sufficient basis for the ALJ to conclude that the claimant would be able to function when exposed to the "stresses that accompany the work setting." *Id.*

The ALJ found that Dr. Rapacciuolo's medical opinion was not persuasive based solely on Dr. Rapacciuolo's provider notes. Tr. at 25. The ALJ found that those notes described Ms. Oakman's overall stability and positive response to medical treatment. *Id.*; *see also id.* at Ex. B14F. Under *Morales*, however, the ALJ erred by relying solely on those provider notes to conclude that Dr. Rapacciuolo's functional assessment of Ms. Oakman was unpersuasive. *See Morales*, 225 F.3d at 319. Among other diagnoses, Dr. Kirby (a consultative psychologist) diagnosed Ms. Oakman with unspecified anxiety disorder and posttraumatic stress disorder with panic attacks—disorders marked by anxiety. *Id.*, Ex. B10F at 8-9. Accordingly, Dr. Rapacciuolo's notes on Ms. Oakman's condition during treatment do not provide sufficient support for the ALJ's conclusion because those notes are not sufficient to find that Ms. Oakman would be "generally stable" *at work*. *See Morales*, 225 F.3d at 319. Accordingly, the Court finds that the ALJ erred in finding that Dr. Rapacciuolo's opinion was unpersuasive based solely on the ALJ's analysis of Dr. Rapacciuolo's treatment notes. *See id.*

### IV. CONCLUSION

For the foregoing reasons, this 19th day of March, 2024, **IT IS HEREBY ORDERED** as follows:

1. Ms. Holly Oakman's Motion for Summary Judgment is **GRANTED**. D.I. 13.
2. Ms. Kilolo Kijakazi's Motion for Summary Judgment is **DENIED**. D.I. 16.

3. This case is remanded for further consideration. On remand, the Administrative Law Judge shall make a sufficient record regarding the sufficiency and consistency of Dr. Rapacciuolo's medical opinions, and whether those opinions impact the ALJ's disability assessment at Steps Four and Five.